WILLIAM S. TOWNE AND MARJORIE H. TOWNE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10924–79.     Filed May 12, 1982.

---

*Walter V. Stafford*, for the petitioners.
*Rebecca T. Hill*, for the respondent.

WHITAKER, *Judge*:[*] Respondent determined a deficiency in petitioners' individual income tax for the calendar year 1975 in the amount of $17,668. The sole issue for decision is whether an individual term life insurance policy purchased by Mr. Towne's employer on his life is part of a plan of group insurance under section 79.[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

William S. Towne (hereinafter petitioner) and Marjorie H. Towne, husband and wife, resided in Piedmont, Calif., when they filed their 1975 joint Federal income tax return and when they filed the petition in this case.

M & T, Inc. (hereinafter M & T), is a Nevada corporation whose principal place of business during 1975 was California. Petitioner has been a director of M & T since approximately 1940, and has been president and chief executive officer since 1962. In 1975, petitioner received a salary of $25,200 from M & T as an officer and received no salary as director.

In 1968, M & T purchased life insurance for its employees under a "group insurance policy" from Crown Life Insurance Co. M & T continued this insurance coverage every year through 1975, the year in issue. At the end of 1975, there were 72 employees of M & T covered by the Crown insurance policy. From 1968 through 1975, the amount of coverage under the Crown policy for each employee was 1 times salary with a maximum coverage of $25,000. In 1975, seven employees of M & T received wages from M & T greater than those paid to petitioner. Under the Crown policy, the amount of life

---

[*]This case was tried before Judge Cynthia H. Hall, who has resigned from the Court. By order of the Chief Judge, the case was reassigned to Judge Meade Whitaker for disposition.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

insurance provided to each of these employees was limited, like that provided to petitioner, to $25,000.

The cost of the Crown insurance policy was determined every 3 years based upon the composite ages of covered employees at the time of the determination. The Crown Life Insurance Co. did not require, and no M & T employee supplied, health examinations or health questionnaires for life insurance coverage in 1975 or in any other year unless the employee failed to file an application for coverage within 31 days after becoming eligible to do so.

Beginning in the early 1970's, the life insurance agent who dealt with M & T tried to persuade petitioner to buy $500,000 worth of life insurance to provide for the income needs of his surviving family members. In 1975, petitioner agreed that he needed a $500,000 life insurance policy payable at his direction. On September 30, 1975, and November 21, 1975, petitioner submitted to Manufacturers Life Insurance Co. (hereinafter Manufacturers) medical evidence exam forms. These two medical evidence exam forms plus an application for insurance dated November 26, 1975, constitute the only application for the Manufacturers insurance policy (hereinafter the Manu-Life policy).

The ManuLife policy is an individual term life insurance policy. There is, however, some indication that it was designed to be integrated with the existing Crown group term policy into a single plan. In this respect, the November 26, 1975, application contained a preprinted box stating "use only for individual section 79 policies."

Along with the application for insurance, an adoption and participation agreement (agreement) on a Manufacturers preprinted form was submitted to Manufacturers. The agreement was filled in by the insurance agent and signed by petitioner as president of M & T. It adopted by reference a PEP 79 trust agreement (trust) and provided that it was "intended to constitute a plan of group term life insurance as defined in Section 79." The agreement indicated that it was intended to revise the existing plan, which had included only the Crown Life policy. It described two eligible classes of employees. Class I was the president, who was to receive an additional $500,000

of insurance under the revised plan, for total revised benefits of $524,000.[2] Class II was described as "all other employees," who were to receive no additional benefits under the revised plan and whose total benefits were listed as 1 times salary.

Article I of the trust explained its purpose as follows:

### Article I: Purpose

This Trust Agreement is intended to establish a plan of group insurance whereby insurance coverage may be provided for the employees of Participating Employers through the utilization of an insurance fund created by the Participating Employers hereunder. The Trust provides a method by which individual life insurance policies are intended to qualify as group insurance under the Internal Revenue Code Section 79. By using the Trust, a Participating Employer may establish a plan of group insurance for his employees by adopting the terms of the Trust instrument. The Participating Employer creates such a plan by completing an Adoption and Participation Agreement which will either establish a new plan of group insurance where none existed previously, or establish a revised plan of group insurance which will include any existing master group or individual contracts plus any additional individual policies issued to the Trustee.

The trust became the owner of the ManuLife policy and was required to pay to Manufacturers all premiums received from participating employers and to pay to participating employers or insured employees or their assigns all funds received from the insurance company on account of insurance policies.

On December 2, 1975, the board of directors of M & T held a special meeting. The following resolution is recorded in the minutes of this meeting:

RESOLVED that this Corporation is authorized to pay premiums for term insurance in the policy amount of $500,000 on the life of Wm. S. Towne, said policy and premium payments structured under Internal Revenue Code, Section 79, naming Marjorie H. Towne as the beneficiary thereof.

In determining the rates for individual term insurance, Manufacturers rates individuals with real or potential health problems on a percentage basis in relation to the premium for a standard rating, e.g., someone with no significant health problems would be rated 100 percent, while someone with very

---

[2]This description was erroneous in that it listed the president's benefits under the existing plan as being only $24,000, when, in actuality, the Crown plan provided benefits of $25,000, the maximum limit under that plan. The description was also erroneous with respect to Class II since it failed to mention that benefits under the Crown Life insurance plan were limited to $25,000.

serious health problems would be rated 500 percent. Petitioner was rated as 300 percent for the year 1975. Therefore, the cost of the $500,000 policy for that year was $33,375, 3 times the $11,125 that would have been charged had petitioner received a 100-percent rating.

M & T deducted the premium paid for the Crown insurance coverage on line 10 of page 31 of its 1975 Federal income tax return, and deducted the premium paid for the ManuLife policy as part of the "Insurance" expense on line 5 of page 32 of that return. Page 31 of the return is entitled "Other Employee Benefit Plans"; page 32 of the return is entitled "Other Deductions."

The Form W–2 furnished to petitioner by M & T showed compensation of $25,974, which was $774 more than his salary of $25,200. This additional $774 was attributable to the insurance coverage provided to petitioner by M & T in excess of $50,000. The $774 figure was computed under section 1.79–3, Income Tax Regs., which prescribes a formula for determining the amount equal to the cost of group term life insurance on an employee's life to be included in the employee's gross income with respect to group term life insurance in excess of $50,000.

## OPINION

Section 79 provides that an employee shall include in his gross income the cost of group term life insurance on his life provided under a policy carried by his employer, but only to the extent that the cost exceeds the sum of the cost of $50,000 of such insurance plus any amounts paid by the employee toward the purchase of such insurance. Thus, under section 79, the cost of the first $50,000 of such insurance is excluded from the employee's gross income. Further, the cost of group term life insurance in excess of $50,000 coverage required by section 79 to be included in the employee's gross income is not the actual amount paid by the employer for such insurance but is an amount determined under uniform premium rate tables set forth in section 1.79–3, Income Tax Regs. The question to be decided in this case is whether section 79 applies to amounts paid by M & T for the purchase of the ManuLife individual term insurance policy on petitioner's life, or more specifically,

whether that policy qualifies as "group-term life insurance" under section 79.

The parties agree that the ManuLife policy does not by itself qualify as group term life insurance. Petitioners contend, however, that the ManuLife individual policy, the agreement, the trust, and the Crown group policy, should be considered together as a single "plan of group insurance." Respondent contends that under section 1.79–1(b)(1), Income Tax Regs.,[3] a plan of group insurance cannot combine one group policy with another policy covering only one individually selected person. We agree with respondent.

The first question to consider is whether petitioner intended to combine the ManuLife and Crown policies into a single plan of group insurance. Petitioner claims that language in the application for the ManuLife policy, the agreement, the trust, and the resolution of the board of directors shows that M & T had a single plan of group term insurance incorporating both the existing Crown group policy and the individual term policy taken out from Manufacturers. Respondent maintains, on the other hand, that M & T never intended to combine the Crown policy and the ManuLife policy into a single plan of group insurance. In support of this argument, respondent points to the vague language of the directors' resolution, the fact that the ManuLife policy was signed and was to become effective before the board even authorized the purchase of the Manu-Life policy, and that the ManuLife and Crown policy premiums were deducted under different categories on M & T's income tax return for 1975.

The evidence on this point supports petitioner. We agree with petitioner that the language in the documents relating to the ManuLife policy discloses an intent to combine the ManuLife and Crown policies into a single plan of group insurance. The ManuLife application form contained a pre-printed box stating that the form was to be used only for "individual section 79 policies." The agreement indicated that the existing plan consisting of only the Crown policy was being revised to include both the Crown policy and the new ManuLife policy and explicitly stated that, together with the

---

[3]All references to sec. 1.79–1, Income Tax Regs., refer to the regulations as in effect in 1975 and not to the regulations as amended in 1979.

trust, it was "intended to constitute a plan of group-term life insurance as defined in Section 79." The trust just as clearly stated that it was designed to establish a revised plan of group insurance which would include both the existing master group policy and any individual policies issued to the trustee. We do not believe the 5-day interval between petitioner's signing of the application for the ManuLife policy and the board's formal approval of this action is of any significance. There is no indication in the record that petitioner, as president of M & T, was not authorized to enter into the insurance contract before he obtained the board's formal approval, nor is there any indication that the board and petitioner had differing views concerning the bringing of the individual policy within the ambit of section 79. Although M & T's deducting the premiums paid on the ManuLife and Crown policies on different lines on its return might be entitled to some evidentiary weight in a close case, this is not such a case. The language of the insurance contract and related documents clearly discloses an intention to revise the group insurance plan to include both the Crown and ManuLife policies. Therefore, we find that M & T intended to incorporate both the ManuLife individual policy and the Crown group policy into a single plan of group insurance qualifying as such under section 79. We must decide, therefore, whether the revised plan comes within the definition of "plan of group-term life insurance" set forth in section 1.79–1(b)(1)(iii), Income Tax Regs.

Section 1.79–1(b)(1)(iii)(*b*) and (*c*), Income Tax Regs., clearly states that a plan of group insurance must preclude individual selection in both the availability of the insurance to employees and in the amount of insurance protection provided.[4] Respondent maintains that if the ManuLife and the Crown policies

---

[4]Sec. 1.79–1(b)(1)(iii):

(*b*) To constitute a plan of group insurance, the plan must make term life insurance available to a group of lives. Such group must include all of the employees of the employer, or, subject to the provisions of (*d*) of this subdivision, a class or classes of such employees the members of which are determined on the basis of factors which preclude individual selection. * * *

(*c*) To constitute a plan of group insurance, the amounts of insurance protection provided under the plan must be based upon some formula which precludes individual selection of such amounts. Thus, for example, the amounts of insurance on the lives of those individuals eligible for insurance under the plan must be based on a factor such as salary, years of service, or position, or a combination of such factors. * * *

are considered together in determining whether there is a plan of group term insurance, there is clearly individual selection with respect to the amounts of insurance protection provided. Respondent points out that although the Crown policy provides a general formula for the amounts of insurance protection based upon a percentage of salary, the extra $500,000 of insurance provided to petitioner does not fit within this formula. Petitioner counters by stressing that section 1.79–1(b)(1)(iii)(*c*), Income Tax Regs., states that the formula used to determine amounts of insurance coverage may be based upon factors such as "salary, years of service, or position, or *a combination of such factors*." (Emphasis supplied.) Petitioner argues that considered together the ManuLife and Crown policies employed a formula based upon both salary and position. Generally, the amount of insurance was dictated by the amount of salary, limited to $25,000, but for the *position* of president an additional $500,000 of insurance was allowed.

Petitioner's argument on this point is not well reasoned. The fact that cannot escape our attention is that the position of president was occupied by only one individual. By providing for excess insurance to the person in this position, M & T was *individually* selecting that one particular person receive an extra amount of insurance. Certainly, if the regulations are to have any meaning whatsoever in prescribing that a general formula must be used to preclude individual selection, each element in the formula must be stated so that it applies to more than one individual. Otherwise, as was done in this case, the amount of insurance protection could always be individually selected for a particular person by simply defining the position or salary factor so narrowly that one of the included factors applied to only one person. There could not be a clearer example of individual selection than this case. We do not attempt here to define the permissible limits or scope of a multifactor formula beyond holding that where one factor of a 2-factor formula covers all employees except the chief executive officer and the other factor applies to a single individual, who happens to be the chief executive officer, there is individual selection within the prohibition of the applicable regulations. We therefore find that if the Crown and ManuLife policies were considered together they would not constitute a plan of group insurance that precluded individual selection.

Petitioner next attacks the validity of the regulatory requirement that a plan of group insurance must preclude individual selection. Petitioner correctly points out that section 79 does not itself contain any definition of "group-term life insurance" and does not refer to individual selection. Although not clearly expressed, petitioner apparently contends that when Congress enacted section 79 it relied on a generally accepted definition of group term life insurance and that the Treasury Department has no authority to narrow this definition by regulations. Fundamental to this argument is the assumption that the presence of individual selection has no place in the traditional definition of group term life insurance. Citing *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948), respondent simply takes the position that the regulations are not plainly inconsistent with section 79 and are not unreasonable and should therefore be upheld.

In assuming that the concept of individual selection has no place in the traditional definition of group term life insurance, petitioner has completely failed to take into account the fact that within the insurance industry and under the laws of most States, at the time Congress enacted section 79 and for many prior decades, only policies that precluded individual selection were recognized as group life insurance policies. The first group life insurance policy was written in 1911. R. Mehr & E. Cammack, Principles of Insurance 551 (4th ed. 1966). Soon thereafter, in 1918, the National Convention of Insurance Commissioners adopted a definition of group life insurance that required the preclusion of individual selection of amounts of insurance. J. Magee, Life Insurance 182 (3d ed. 1958). In 1946, the National Association of Insurance Commissioners revised the definition of group life insurance but it did not change the requirement that amounts of insurance under an employer group life insurance policy must be based upon some plan precluding individual selection.[5] Like the insurance

---

[5] The reason why the insurance industry has traditionally defined group insurance as not including policies of insurance providing for individual selection is that a group insurer has less opportunity to exercise underwriting judgment with respect to particular persons in the group. See R. Keeton, Basic Text on Insurance Law, sec. 2.8(a), at 63 (1971). Group insurance is usually issued without medical examination or other evidence of insurability. S. Huebner & K. Black, Life Insurance 552 (8th ed. 1972). If there were no requirement that the amount of insurance per participant be determined under some formula applicable to all the

industry, the laws of most States have for a long time defined group life insurance as including only policies that preclude individual selection. See generally, J. Magee, *supra* at 182; and W. Vance, Handbook on the Law of Insurance, sec. 203, at 1033 (3d ed. 1951). For example, in its general definition of group life insurance, California law specifies that the policy must be "For amounts of insurance based upon some plan which will preclude individual selection." Cal. Ins. Code sec. 10202 (West 1972).

In view of this long established definition of group life insurance, in which the preclusion of individual selection had been considered crucial, we find no merit to petitioner's contention that the regulations improperly narrowed the definition of group term life insurance by requiring that such insurance preclude individual selection.

Thus, we find that the ManuLife policy and Crown Life policies cannot constitute a single plan of group term insurance under section 1.79–1(b)(1), Income Tax Regs. The ManuLife policy was merely an individual life insurance policy purchased by M & T for petitioner. Its incorporation with the Crown group policy under the trappings of a purported modified plan of group insurance must be recognized as a masquerade, which falls outside the scope of section 79. The life insurance protection provided to petitioner by his employer constitutes a present economic benefit and petitioner received additional income in 1975. Sec. 1.61–2(d)(2)(ii)(*a*), Income Tax Regs.; *Frost v. Commissioner*, 52 T.C. 89 (1969). The amount of unreported income is the total premiums paid by M & T for the ManuLife policy in 1975 ($33,375) minus the amount reported by petitioner as additional income under section 79 ($774), which comes to $32,601.

*Decision will be entered for the respondent.*

---

employees, there would necessarily be adverse selection against the insurance company because the older employees and those in poor health would naturally take disproportionately large amounts of insurance. See W. Vance, Handbook on the Law of Insurance, sec. 203, at 1034 (3d ed. 1951); J. Magee, Life Insurance 190 (3d ed. 1958); R. Mehr & E. Cammack, Principles of Insurance 548 (4th ed. 1966).