N.W.D. INVESTMENT CO., ET AL. [1] v. COMMISSIONER OF INTERNAL REVENUE, Respondent N. W. D. Inv. Co. v. Commissioner
Docket Nos. 10814-80, 10815-80, 10816-80, 10817-80, 10818-80, 10819-80, 10820-80.
United States Tax Court
T.C. Memo 1982-564; 1982 Tax Ct. Memo LEXIS 182; 44 T.C.M. (CCH) 1246; T.C.M. (RIA) 82564; September 27, 1982. *182 1. Individual life insurance policies issued to all officers and wives of corporate petitioner were issued as part of a group term life insurance plan and the premiums paid by corporate petitioner constituted additional compensation to the officers and are deductible as such by the corporation. 2. The premiums paid on the individual policies issued to the officers qualify for exclusion under sec. 79, I.R.C. 1954, but the premiums on the policies issued on the officers' wives do not so qualify. 3. Company-owned automobiles taken home overnight was for the business interests of the employer and the cost of commuting is deductible by the employer. 4. The commuting expense constitute additional compensation to the officers, taxable as such. John W. Flynn, for the petitioners. Wayne R. Appleman, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable year 1976 as follows: Docket
No.
Petitioner
Deficiency
10814-80
N.W.D. Investment Co., &
$212,198.00
Subsidiary
10815-80
Gary L. Moseson and Silvia U.
1,985.00
Moseson
10816-80
Christian F. Osmers and Monika
3,690.00
Osmers
10817-80
Kenneth R. Eads and Inga M.
2,154.00
Eads
10818-80
Frederick C. Osmers and Helen R.
20,870.00
Osmers
10819-80
Bonnie J. Jardine
4,180.59
10820-80
Charles A. Jardine
2,705.00
*183 These cases have been consolidated for purposes of trial, briefing, and opinion. The issues presented are as follows: (1) Whether petitioner N.W.D. Investment Co. & Subsidiary (hereinafter NWD) is entitled to a deduction for premium payments in the amount of $68,670 made on life insurance policies on the lives of and owned by the individual petitioners; (2) whether the individual petitioners may exclude a portion of such premium payments from income pursuant to section 79[2]; (3) whether NWD is entitled to a deduction of $7,550 for the cost of the use of its company cars by the individual petitioners for commuting purposes; and (4) whether the individual petitioners realized additional income by being provided the use of such automobiles for commuting purposes. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of fact and exhibits attached thereto are incorporated herein by reference. NWD is a Washington corporation whose principal place of business was located in Auburn, Wash., at the time of filing the petition *184 herein. It filed a consolidated corporate Federal income tax return with its subsidiary, Northwestern Drug, Co., for the period ending December 28, 1976, with the Internal Revenue Service, Ogden Utah. All of the individual petitioners were residents of the State of Washington at the time they filed their petitions herein. Each of the petitioner-couples filed a joint return for the taxable year 1976 with the Internal Revenue Service, Ogden, Utah, with the exception of Charles A. Jardine and Bonnie J. Jardine, who filed separate returns. [3]
NWD was organized under the laws of the State of Washington in June 1975, and is a holding company, its sole asset being all of the outstanding common stock of Northwestern Drug Co. (hereinafter Northwestern Drug), its operating subsidiary. During the taxable year 1976, each of the petitioner-couples owned 20 percent of the outstanding common stock of NWD. [4] For more than 50 years *185 Northwestern Drug has been in the business of distributing pharmaceutical drugs, health and beauty aids, and sundry items to pharmacies and drugstores in Washington, Oregon, and Northern California. In addition, Northwestern Drug provides marketing services and computer assistance to its customers, which include approximately 700 pharmacies and 450 retailers. Northwestern Drug has been a successful, rapidly growing firm, and in 1976 it had sales of nearly $50 million, an increase of about $9 million over its sales in 1975, and about $16 million over its sales in 1974. During the taxable year 1976 Northwestern Drug employed approximately 160 employees. Petitioners Kenneth Eads, Gary Moseson, Frederick Osmers, Christian Osmers, and Charles Jardine (hereinafter sometimes collectively referred to as the individual petitioners) held the following positions as officers of Northwestern Drug and received the following salaries during 1976: [5]
Petitioner
Position
Salary
Frederick
Chairman
$67,000
Christian
President
94,538
Kenneth
Executive Vice
58,615
president
Charles
Vice president
54,385
Gary
Vice president
51,000
*186 In addition, each of the individual petitioners was a member of the board of directors of both NWD and Northwestern Drug during 1976 and years prior thereto. Each of the individual petitioners worked full time in his above-referenced position, and each was in charge of one of five operating divisions into which Northwestern Drug was divided. The amount of compensation that was paid to Northwestern Drug's non-union employees, [6] including the individual petitioners, was determined by a compensation review committee which met twice a year. The committee was comprised of Kenneth Eads, the executive vice president, and Christian Osmers, the president. The committee first established the base salary for its employees and then, depending on the company's profitability, determined whether any bonuses or fringe benefits would be awarded. The review procedure entailed a review of the company's budget for compensation, both on a divisional basis and for the officers individually. At the first meeting of the compensation review committee *187 held in January or February of 1976, it was decided that as additional compensation for its non-union employees the life insurance benefits of such employees would be increased. In this regard, Northwestern Drug purchased a group term life insurance policy from Western Life Insurance Co. (hereinafter Western). Pursuant to this policy, the following classification of eligible employees and the amount of insurance provided for each class were established: Amount of insurance
Class of employee
Employee
Spouse
Child
Officers and board chairman
$30,000
$1,000
$1,000
Managers [7]
20,000
1,000
1,000
All other nonunion employees
10,000
1,000
1,000
It was also decided that for the officers only, additional life insurance over and above that already provided would be made available. This insurance was purchased from the Northern Life Insurance Co. (hereinafter NORLIC), in the form of individual life insurance policies. [8] Each of the policies were in the face amount of $350,000, and provided both term and permanent insurance features. The amount of the insurance purchased was based on the amount of money Northwestern Drug had available to *188 make the premium payments. The amount of the premiums on each policy depended upon the age, sex, and health of the insured. [9] Each of the individual petitioners elected to have issued a NORLIC insurance policy on his life, which became effective February 20, 1976. During 1976 Northwestern Drug paid premiums on the NORLIC insurance policies as follows: Officer
Premium
Frederick
$40,521
Christian
5,920
Kenneth
5,034
Charles
14,499
Gary
5,451
Total
$71,425
On or about the same time as the purchase of the Western and NORLIC life insurance policies, Northwestern Drug entered into an "Adoption Agreement" with NORLIC, establishing an insurance trust. The agreement recited that the adoption of the trust was to "establish a plan of group term life insurance," and incorporated into such trust both the Western and NORLIC life insurance policies. The trust recited that its purpose was: to create a trust and a master plan of insurance under which employers *189 may provide life insurance protection for their respective eligible employees and their dependents through the use of individual policies. Under each plan established by an employer hereunder, term life insurance will be made available to a group of lives. It is intended that each plan of insurance created hereunder shall comply with the requirements of Internal Revenue Code § 79 and will qualify as a plan of group insurance under such section and regulations promulgated by the Treasury Department with respect thereto. In August of 1976, when the compensation review committee met for the second time, it was determined that, based on the profitability of Northwestern Drug, the officers were entitled to additional compensation. Based on the money available and in view of a "package deal" offered by NORLIC, it was decided that Northwestern Drug would make available additional life insurance in the face amount of $350,000 on the lives of the wives of its officers. [10] A NORLIC insurance policy was issued on the life of each of the wives of the individual petitioners. Like the policies made available to the officers, these were individual insurance policies, provided by NORLIC, and *190 became effective on October 20, 1976. [11]
An "Adoption Agreement," dated August 25, 1976, was entered into between Northwestern Drug and NORLIC, establishing an insurance trust which, in effect was intended to amend the existing insurance trust, supra, by increasing the amount of life insurance available to spouses of its officers by $350,000. During the taxable year 1976, Northwestern Drug made the following premium payments on the NORLIC insurance policies issued on the lives of the wives of the individual petitioners: Wife
Premium
Helen Osmers
$22,010
Inge Eads
4,489
Monika Osmers
5,238
Sylvia Moseson
3,382
Bonnie Jardine
9,465
Total
$44,584
In 1977, Northwestern Drug hired Thomas McMahon (hereinafter McMahon) as vice president of finance. As an officer of the company, both he and his wife were eligible for and did have issued NORLIC insurance policies on their lives. McMahon never owned stock in NWD, although he was given the option to purchase up to 7-1/2 percent of such stock if he remained with Northwestern Drug for 2 years. McMahon left in 1979 before becoming *191 a shareholder. Thereafter, Roger Omholt was hired to replace McMahon, and he and his wife also had NORLIC insurance policies issued on their lives, although Omholt owned no stock of NWD. The total compensation received by the individual petitioners during 1976 as officers of Northwestern Drug, including salary, bonuses, and premium payments on all of the aforementioned life insurance policies purchased for themselves and their wives, was reasonable. [12] *192 Further, purchasing life insurance policies was a common form of compensation for senior employees in the industry, since it provided them and their families with a form of deferred compensation. On its consolidated corporate income tax return for the period ending December 28, 1976, NWD deducted $67,939 of the $116,010 [13] in premiums paid on the NORLIC life insurance policies. Respondent disallowed this deduction in its entirety. [14]
The individual petitioners included in income only a portion of the premium payments made by Northwestern Drug on the NORLIC life insurance policies purchased for themselves and their wives, and excluded the remainder pursuant to section 79. Respondent determined that none of the premium payments were excludable under section 79 and, to the extent such payments were for insurance coverage in 1976, they must be included in the individual petitioner's taxable income. [15] *193 During the taxable year 1976, and for years prior thereto, all employees of Northwestern Drug who were provided with a company car, including the individual petitioners, were allowed to use such car for commuting to and from work. This policy was established because the company was located in an industrial section of Tacoma which had a history of vandalism, and the company did not have a fenced-in parking lot to protect the vehicles. NWD deducted the expenses incurred in connection with its company cars. Respondent determined that, to the extent the cars were used by the individual petitioners for commuting purposes, no deduction is allowed. He determined this amount to have been $7,550 and disallowed deduction of such amount in its entirety. None of the individual petitioners reported the use of his company car as income *194 on his 1976 income tax return. Respondent determined that the rent-free use of such cars, to the extent used for commuting purposes, [16] constituted dividend income and increased his taxable income accordingly. OPINION The first issue for decision is whether NWD is entitled to deduct the premium payments made on the NORLIC life insurance policies established for the individual petitioners and their wives. NWD maintains that the premium payments were "other compensation" within the meaning of section 162(a)(1), and that the total compensation paid to the individual petitioners including the premium payment was reasonable under the circumstances, and is therefore deductible. Respondent claims that the premium payments on the NORLIC life insurance policies were not additional compensation to the individual petitioners, but rather were constructive dividends, and, as such, are not deductible by NWD. In support of this, he argues that the payments were made on *195 behalf of the individual petitioners in their capacity as shareholders, not employees. We disagree with respondent. Section 162(a) allows a deduction for all ordinary and necessary business expenses, including reasonable compensation for services actually rendered. In determining whether NWD may deduct the premiums paid by its subsidiary, Northwestern Drug, the regulations set forth two requirements. First, that such payments must not exceed the reasonable compensation for the services actually rendered. Second, that the payments were actually intended to be paid purely for services. Section 1.162-7(a), Income Tax Regs.; see Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1340 (1971), affd. 496 F.2d 876 (5th Cir. 1974). On the other hand, payments of dividends may not be deducted. Sec. 1.162-7(b)(1), Income Tax Regs.; Electric & Neon, Inc. v. Commissioner,supra at 1340. [17] *196 That the payments were made to NORLIC rather than directly to the individual petitioners does not preclude dividend treatment if such payments were made on behalf of controlling shareholders and primarily for their benefit. [18] See Epstein v. Commissioner,53 T.C. 459 (1969). The question of whether the premium payments herein were intended as compensation is a factual question, the burden of proof of which is on NWD. Rule 142(a), Tax Court Rules of Practice and Procedure; Electric & Neon, Inc. v. Commissioner,supra at 1340. Respondent asserted on brief that "the only connecting factor between the purchase of [the NORLIC life insurance policies] and the parties covered by the policies was the common equal ownership of the [NWD] stock." He points out that each of the policies was in the amount of $350,000, "approximately in proportion to their equal ownership of stock in the corporation." In our view, however, respondent has failed to take into account many of the circumstances surrounding the payment of the premiums herein. All of the individual petitioners were full-time employees of Northwestern Drug during the taxable year 1976 and for many years prior thereto. In determining the amount and form of compensation to be paid to Northwestern Drug's employees, a compensation review committee met twice a year to review the company's budget for compensation, both on a divisional basis and for the officers *197 individually. In one of these meetings, held in January or February of 1976, it was decided to compensate the officers additionally by supplementing the amount of life insurance which it provided for them with individual life insurance policies issued by NORLIC. The face amount of those policies, $350,000, was determined by the amount of funds available for premium payments. This same procedure was followed when the compensation review committee met in August of 1976 and decided that as additional compensation for the officers, the existing life insurance policies provided on the lives of each of the officers' spouses would be supplemented by a NORLIC life insurance policy in the face amount of $350,000. The NORLIC life insurance policies were available to all officers, not just those officers who were also shareholders of NWD. Neither McMahon nor Omholt were shareholders of NWD, but each, as an officer of Northwestern Drug, was entitled to and in fact did participate in such insurance plan, as did their wives. We have concluded from the evidence, particularly the testimony of petitioners' witnesses Eads, who described the duties performed by the various officers, and Van, a CPA *198 who was a specialist on executive compensation, that the total compensation packages paid to the individual petitioners, including the premium payments on the NORLIC life insurance policies held by them and their wives, were reasonable. In fact, respondent does not contend that they were not reasonable and offered no evidence with respect thereto. Moreover, providing life insurance for employees was a common form of compensation in the industry. We also find it noteworthy that in recognition of the financial difficulty that compensation in the form of life insurance could cause an officer, since he would have to report at least a portion of the premium payments in income while actually receiving no payment himself, each officer had the option of receiving in cash the premium payments to be made on their behalf instead. (See n. 9, supra.) There is no evidence to support respondent's argument that the policies were intended as dividends, except the fact that each of the petitioners owned an equal amount of the stock of the company and the face amount of the policies issued to the petitioners and their wives were the same. However, the premiums paid by Northwestern Drug for the policies *199 varied considerably so that the amounts paid by Northwestern Drug for the benefit of each petitioner-stockholder were not the same. This weakens considerably the basis of respondent's premise. Based on the foregoing and the record as a whole, we find that the premiums paid on the NORLIC life insurance policies herein were intended to be additional compensation to the individual petitioners, as employees, and therefore we hold that such payments were properly deducted by NWD. The next issue is whether, pursuant to section 79, petitioners may exclude from their incomes any portion of the premiums paid on the NORLIC life insurance policies. Petitioners maintain that the NORLIC life insurance policies were part of a plan of group life insurance provided by Northwestern Drug, as employer of the individual petitioners. Therefore, they claim that a portion of the premium payments made on behalf of the individual petitioners and their wives may be excluded from income pursuant to section 79. To the contrary, respondent claims that the NORLIC life insurance policies were not a part of a plan of group life insurance and therefore section 79 is inapplicable to the premium payments made on *200 such policies. [19]
Section 79[20] *201 provides that the cost of group-term life insurance provided by an employer on the life of an employee in an amount not in excess of $50,000 is excludable from the gross income of the employee. To the extent the group-term life insurance for an employee exceeds $50,000, the cost thereof is includable in his gross income in an amount determined under the uniform rate tables set out in section 1.79-3, Income Tax Regs.[21]Towne v. Commissioner,78 T.C. 791 (1982). Group-term life insurance within the meaning of section 79 is term insurance [22] provided under a master policy or a group of individual policies which form a part of a plan of group insurance. Sec. 1.79-1(b)(1)(i), Income Tax Regs. To constitute a plan of group insurance, the plan must be arranged by an employer for his employees pursuant to the employment relationship, and eligibility must be based primarily thereon. Further, the plan must preclude individual selection both as to the availability of the insurance to employees and as to the amount of insurance protection provided. Sec. 1.79-1(b)(1)(iii), Income Tax Regs.; Town v. Commissioner,supra at 797. Respondent claims that the NORLIC life insurance policies cannot be considered as part of a plan of group insurance for two reasons. First, respondent claims that the insurance *202 was provided to the individual petitioners as shareholders, not as employees, and thus the eligibility for such insurance was not based primarily on the employment relationship. We disagree. The determination of whether the individual petitioners were provided with the insurance in their capacity as employees or as shareholders is a factual question, and, as we have discussed at length herein above, the NORLIC life insurance was provided as additional compensation to its officer-employees. The regulations contemplate that an employee may stand in another relationship with his employer, i.e., owner or director, and only require that eligibility for coverage under the plan be based primarily on the employment relationship. See sec. 1.79-1(b)(2)(i), Income Tax Regs.; Enright v. Commissioner,56 T.C. 1261, 1264 (1971). For the reasons previously stated, we find that this requirement has been met. Respondent's second argument is that the amount of the insurance coverage provided in the NORLIC policies was individually selected by the individual petitioners through their control of NWD. We also disagree with this contention. The regulations provide that the amount of insurance provided *203 under the plan "must be based upon some formula which precludes individual selection of such amounts. Thus, for example, the amounts of insurance on the lives of those individuals eligible for insurance under the plan must be based on a factor such as salary, years of service, or position, or a combination of such factors." Sec. 1.79-1(b)(1)(iii)(c), Income Tax Regs. Respondent maintains that the only "formula" used in determining the amount of insurance to be provided was stock ownership and that the shareholders used their control of NWD to individually select the amount of the NORLIC policies. He correctly points out that there was no apparent relationship between the salaries paid to the individual petitioners and either the face amount of the life insurance policy or the premiums paid on such policies. It is also true that neither age nor seniority of the individual petitioners was used as a criterion to determine the amount of the insurance provided since each of the individual petitioners was a different age and had been employed by Northwestern Drug for different lengths of time. (See n. 6, supra.) However, the criterion which respondent has apparently overlooked is "position." *204 Both the availability of the insurance and the amount of the insurance available to the individual petitioners was determined on the basis of their position held with Northwestern Drug, namely, that of officer, irrespective of whether they were shareholders. The adoption agreement indicated that the class of employees eligible to participate in the NORLIC insurance was officers, without regard to whether they were shareholders. This is further borne out by the fact that similar policies were purchased for two individuals who became officers subsequent to the taxable year in issue and who were not shareholders. Moreover, the face amount of each of the NORLIC insurance policies, $350,000, was determined by a compensation review committee, which based its decision on the funds available for the payment of the premiums rather than on the basis of stock ownership. In view of the evidence presented, we are convinced that the NORLIC insurance policies were provided to the individual petitioners as employees of Northwestern Drug and that the amount of the insurance provided for them was determined on the basis of their position as officers of Northwestern Drug. Therefore, these policies *205 qualified as part of a plan of group insurance and come within the ambit of section 79. [23]
Respondent cites Enright v. Commissioner,supra, and Whipple Chrysler-Plymouth v. Commissioner,T.C.Memo. 1972-55, in support of his position that in order for the premiums to be excluded under section 79, the plan must be pursuant to the employment relationship, and eligibility must be based primarily thereon. We agree with the premise for which those cases are cited but find the facts in those cases make them distinguishable. In Enright, the petitioner was denied an exclusion of the premiums paid on an individual policy issued on his life, in addition to his coverage under a group policy that covered all employees, because the individual policy was issued to him in his capacity as a director rather than as an employee. In fact the *206 generl tenor of that opinion supports our conclusion here. In Whipple Chrysler-Plymouth, the group policy in dispute was issued under a Chrysler corporation's plan for owners of dealerships rather than a plan of the dealership of which the taxpayer was an employee. See also Towne v. Commissioner,78 T.C. 791 (1982), a case involving facts similar to those in this case except that an individual policy, in addition to a group policy covering all employees, was issued to only one person, the president of the employer company. While concluding that the individual policy was intended to be issued as part of the group term life insurance plan, we held that it could not be included in such plan because by providing for excess insurance only to the position of president the plan was individually selecting only one particular person to receive an extra amount of insurance, which violated the prohibition against individual selection in section 1.79-1(b)(iii)(b), Income Tax Regs. Such is not the case before us because the excess insurance was issued to all officers of NWD without regard to their compensation or individual positions in management. With regard to the NORLIC life insurance *207 policies provided for the wives of the individual petitioners, respondent claims that since the wives were not employees of Northwestern Drug, section 79 is inapplicable. We agree. Section 1.79-1(a)(3), Income Tax Regs., provides that section 79 does not apply to term life insurance provided on the life of the spouse of an employee. The premiums paid on those policies are taxable to the employee under section 61 unless the amount of the insurance payable at the death of the spouse is not greater than $2,000. See sec. 1.61-2(d)(2)(ii)(b), Income Tax Regs.
The NORLIC life insurance policies purchased on each of the lives of the wives was in the face amount of $350,000, vastly in excess of $2,000, and therefore the premiums paid on such policies must be included in income by the individual petitioners, the employees. Respondent's determination of deficiency in this regard is sustained. The next issue is whether NWD is entitled to a deduction of $7,550 under section 162 for the cost of the use of its company cars by the individual petitioners for commuting to and from work. [24] *208 NWD claims that it had a legitimate business purpose for allowing its officers, the individual petitioners, to drive the company cars to and from work, and therefore it is entitled to deduct, as additional compensation, the cost of such use. Conversely, respondent maintains that there was no business reason for providing company cars to its officers for commuting purposes, and therefore the deduction must be denied. If corporate property is used by a shareholder or member of his family for personal use, and such use is not proximately related to the corporate business, the corporation is not entitled to a deduction for such use. [25] See Commissioner v. Riss,374 F.2d 161, 166-167 (8th Cir. 1967), affg. a Memorandum Opinion of this Court; Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 663 (1962). We find that the use of the company cars was proximately related to the corporate business. It was Northwestern Drug's *209 policy to allow all its employees who had company cars to use them to commute to and from work, not just the individual petitioners. Northwestern Drug was located in an area of Tacoma which had a high rate of vandalism, and rather than build fences or hire more security people, it decided to allow its employees to take their company cars home from work. Respondent offered no evidence in rebuttal. It is not for us to judge the propriety of that decision, but only to decide whether such decision was proximately related to the company business. Under the circumstances herein, we find that it was, and hold for NWD. The last issue is whether the individual petitioners must include in income the value of the use of the cars for commuting purposes. The individual petitioners made no arguments either at trial or on brief with respect to this issue, so we assume they have conceded it. In any event, we find that such use constituted additional compensation and must be included in income. Respondent's determination on this issue as to each of the petitioners herein is sustained. Decisions will be entered in all docket numbers under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Gary L. Moseson and Silvia U. Moseson, docket No. 10815-80; Christian F. Osmers and Monika Osmers, docket No. 10816-80; Kenneth R. Eads and Inga M. Eads, docket No. 10817-80; Frederick C. Osmers and Helen R. Osmers, docket No. 10818-80; Bonnie J. Jardine, docket No. 10819-80; and Charles A. Jardine, docket No. 10820-80.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
3. Frederick C. Osmers and Helen R. Osmers and Charles A. Jardine and Bonnie J. Jardine also filed amended returns for the taxable year 1976.↩
4. The facts were unclear as to whether each couple owned their stock jointly or whether each spouse owned 10 percent separately.↩
5. Each of the individual petitioners were different ages and each had been employed by Northwestern Drug for different periods of time.↩
6. Union employees were compensated pursuant to their Teamsters Union contract. Approximately 75 percent of its employees were members of the Teamsters Union.↩
7. During the taxable year 1976, there were approximately six managers.↩
8. These individual insurance policies were issued on the lives of the individual officers and were owned by them. ↩
9. The officers of Northwestern Drug had the option of receiving in cash the amount of the premium paid on their behalf to acquire this insurance.↩
10. The wives were not employees of Northwestern Drug. ↩
11. These policies were owned by the individual wives whose lives were insured.↩
12. The following table reflects the total amounts paid to or for the individual petitioners as compensation for the taxable year 1976: Premiums paid on
the NORLIC policy
Premiums paid on
owned by the NORLIC policy
petitioner's
Petitioner
Salary
owned by petitioner
wife
Total
Frederick Osmers
$67,000
$40,520.50
$20,010
$127,530.50
Christian Osmers
94,538
5,919.50
5,238
105,695.50
Gary Moseson
51,000
5,450.50
3,382
59,832.50
Charles Jardine
54,385
14,498.00
9,465
78,348.00
Kenneth Eads
58,615
5,034.00
4,488
68,137.00
The above table does not reflect the amount paid for premiums on the Western group life insurance policy with respect to each petitioner, which was not available from the record.
13. $71,426 (amount paid for the officers) + $44,584 (amount paid for their wives). ↩
14. Respondent's notice of deficiency indicated that the amount disallowed as a deduction in this regard was $68,767. The stipulation of facts, however, indicated that NWD only deducted $67,939 in connection with the premium payments.↩
15. Respondent did not include the entire premium payment made in 1976 for each petitioner in income. Such treatment was due to the fact that the premium payments covered a period of one year and, since the NORLIC policies became effective on February 20, 1976, and October 20, 1976, a portion of such payments were for insurance coverage subsequent to 1976. We express no opinion as to the correctness of this treatment.
16. The revenue agent testified with reference to the automobile issue that the "dispute is strictly the commuting mileage." Whether this applies to both the deduction by the employer and the income to the employees is not clear.↩
17. See Whipple Chrysler-Plymouth v. Commissioner,T.C. Memo. 1972-55. 18. See Sackett v. Commissioner,T.C. Memo. 1981-661↩.
19. Respondent has not disputed the correctness of the amounts excluded from the individual petitioners' returns, as calculated using the regulations under sec. 79↩. Rather, he disputes the applicability of that section to the facts herein.
20. SEC. 79. GROUP-TERM LIFE INSURANCE PURCHASED FOR EMPLOYEES. (a) General Rule.--There shall be included in the gross income of an employee for the taxable year an amount equal to the cost of group-term life insurance on his life provided for part or all of such year under a policy (or policies) carried directly or indirectly by his employer (or employers); but only to the extent that such cost exceeds the sum of-- (1) the cost of $50,000 of such insurance, and (2) the amount (if any) paid by the employee toward the purchase of such insurance. ↩
21. All references to sec. 1.79, Income Tax Regs.↩, refer to the regulations in effect in 1976.
22. There is apparently no dispute that to the extent the NORLIC policies provided permanent (other than term) life insurance, sec. 79↩ is inapplicable to the premiums paid thereon.
23. We note that respondent has not asserted that the NORLIC policies do not constitute a plan of group insurance because they do not provide protection for at least ten full-time employees as required by sec. 1.79-1(b)(1)(iii)(d↩), Income Tax Regs. He considered the Western and NORLIC policies together and therefore determined this requirement to have been met.
24. The amount disallowed by respondent was determined by first calculating the roundtrip mileage from home to work for each of the individual petitioners, and then multiplying that amount by the number of days worked in 1976, which sum was then multiplied by.18 cents. NWD has not disputed the amount so determined.
25. See Whipple Chrysler-Plymouth v. Commissioner,supra.↩