**EMPIRE ELECTRONICS CO., Inc.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 108, Docket 27549.**

United States Court of Appeals
Second Circuit.

Argued Nov. 7, 1962.

Decided Nov. 23, 1962.

Jacob Leo Frank, New York City, for appellant.

Peter H. Ruvolo, Asst. U. S. Atty., New York City (Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York), for appellee.

Before MEDINA, SMITH and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

Plaintiff Empire Electronics Co., Inc. (hereafter Empire) appeals from an order entered on a cross-motion for summary judgment by the defendant. We find that summary judgment under Rule 56 of the Federal Rules of Civil Procedure was improperly employed to resolve the dispute presented to the District Court, and we therefore reverse and remand for further proceedings consistent with this opinion.

This action for conversion was brought to recover the value of certain cables presently in the possession of the United States Government. On October 19, 1955, the Signal Corps Branch of the United States Army contracted with the firm of Gillmors, Inc. for the manufacture of 210 public address systems. On April 10, 1956, Gillmors contracted with appellant Empire for the manufacture of 210 units of seven different types of cables, to be component parts of the public address systems. The Empire-Gillmors purchase order listed each of the seven different types of cables separately with a separate unit and total price specified for each. A pre-production sample of each of the seven cables was submitted to Gillmors on January 25, 1957, and these were inspected and approved by the Signal Corps. Upon this approval, Empire was directed by Gillmors to manufacture the balance of 209 each of the seven cable assemblies; Gillmors paid a total of $153.08 for the samples already furnished.

On February 5, 1957, defendant and Gillmors modified the general contract by providing for 90% "progress payments", upon the making of which title to materials and work "acquired or produced" by Gillmors was to vest in the defendant. Although the defendant knew of Empire's contract with Gillmors, it is agreed that it did not notify Empire of this modification. On March 13, 1957, a progress payment of $35,883.50 was made by the defendant to Gillmors; on May 9, a second payment was made in the sum of $25,927.91. These payments purported to cover the 418 cables of two types made the subject of this action.

In the meantime and on March 25, 1957, work on all seven types of cables was in progress. Two types had been completed except for the attachment of certain aluminum identification tags required by the Army Technical Manual specifications; before these tags could be affixed to the cables, the proper inscriptions were to be supplied by Gillmors. On or about March 25, 1957, Gillmors demanded the two cable assemblies here in dispute, completed except for the identification markers, in order that the Government might see the progress made under the principal contract. Empire acceded to this and Gillmors' truck brought 209 of each of the two cable types to its plant in Hicksville, Long Island.

After these cables had been in Gillmors' plant for several weeks, Gillmors wrote to the plaintiff, on May 8, setting forth the proper identification markings to be placed on all seven cable assemblies, including the two previously picked up from the appellant.

The next day, May 9, 1957, the Government made progress payments on these two sets of cables; on August 1 through August 8, the defendant took an inventory at Gillmors' plant of all the materials upon which progress payments had been made, segregating them. On August 13, 1957, while the 418 cables were in the possession of Gillmors, it filed a petition in bankruptcy and on October 29, 1957, one day before a sale of the assets of the bankrupt was to be held, the defendant was permitted by court order to take possession of the cables here in dispute.

In the District Court, Empire contended that it retained title to the two sets of cable assemblies at all times, and that the assumption of possession by the Government constituted a conversion. The parties submitted affidavits, and each moved for summary judgment, stipulating that "there was no genuine dispute as to the material facts herein." The District Judge held that under the applicable New York law the contract for the seven sets of cables was divisible and that title to the two sets of cables in dispute had passed to Gillmors upon their removal to Gillmors' plant in March 1957. He therefore held that upon the May 9 progress payment by the Government, Gillmors' title in the cables passed to the defendant. Summary judgment was awarded accordingly to the defendant.

I.

Federal Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is true that the actual occurrences recorded in the affidavits of both parties are indeed undisputed, but it does not necessarily follow that there is "no genuine issue as to any material fact"; nor can we say that because of this one of the parties "is entitled to a judgment as a matter of law." We believe that the District Judge was right in concluding that the subcontract between Empire and Gillmors was divisible, but we hold that the issue of passing of title to the cables from Empire to Gillmors rested on a finding as to the intentions of the parties about which reasonable men could differ. The District Judge erred in resolving this latter issue on a motion for summary judgment.

II.

*Divisibility.* Section 156 of the New York Personal Property Law (Uniform Sales Act § 76) defines a "divisible con-

tract to sell" as a "contract to sell * * in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation." Since the terms of the Empire-Gillmors purchase order are not in dispute, and since we need only look to its terms in order to determine whether it falls within the statutory definition, the question of divisibility raises a "matter of law," appropriate for resolution by summary judgment. See, e. g., Wolf v. Schaben, 272 F.2d 737, 740 (8th Cir. 1959). The purchase order lists each of the cable types separately, describes each separately, and records the unit price and total price of each type separately. It therefore falls precisely within the statutory definition of a divisible contract, see 2 Williston on Sales § 466 (rev. ed. 1948), as a matter of law, and title to some of the cables could pass independently of the others. The District Judge's conclusion to this effect was proper.

### III.

*Intention to Pass Title.* Whether title passed from Empire to Gillmors, such that the defendant's progress payments were sufficient to give it title, raises a more difficult question as to the propriety of granting a motion for summary judgment.

Under the applicable rules of New York law, the passage of title, or "the transfer of property in goods," is based upon the intentions of the parties to the contract. Section 99 of the Personal Property Law reads:

"1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"2. For the purpose of ascertaining the intention of the parties, re-

gard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Section 99(2) provides for a broad investigation into all the circumstances of the dealings between the parties. After this investigation is made, Section 100 is called into play:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

\* \* \* \* \* \*

"Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done. \* \* \* "

The District Court, in searching for the intention of Empire and Gillmors with respect to the transfer of property in or passage of title to the two sets of cable assemblies, found that although the affixation of identification markers by Empire was required by its contract with Gillmors, title nonetheless passed to Gillmors when it picked up the cables at the Empire plant and brought them to its plant on Long Island. This, the judge held, was an assent by both parties to an "unconditional appropriation" of the goods to the contract, in accord with Rule 4 of section 100 of the Personal Property Law.[1] We hold that, in applying section 100 and determining the intention of the parties concerning the transfer of title, the District Court was confronted with a "genuine issue as to (a) \* \* \* material fact" (Fed.R.Civ.P. 56(c)), and summary judgment should not have been granted.

---

[1]. "Rule 4. \* \* \* Where there is a contract to sell unascertained or future goods by description, and goods of that description, and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

## IV.

The procedural device of summary judgment is one of the keystones of modern federal practice. It facilitates the prompt disposition of actions in which there is no genuine issue as to any material fact.

"It is intended to prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials where no genuine issues of fact are raised. The procedure enables a party to pierce the allegations of fact in the pleadings and obtain relief by showing that there are no issues of fact to be tried. Its purpose is also to separate the formal from the substantial issues, eliminate improper issues, determine what, if any, issues of fact are present for the jury to determine, and enable the court to give judgment on the issues of law where no disputed issues of fact are found."

3 Barron & Holtzoff, Federal Practice and Procedure, § 1231, at 97–100 (1958).

That is axiomatic. But it is also a maxim that the court, on a motion for summary judgment, cannot *try* issues of fact but can only determine whether there *are* issues of fact to be tried; and, once having determined this affirmatively must leave those issues for determination at a trial. The problem besetting courts lies in defining what is or what is not an "issue of material fact". It has been said, and it is quite true, that "no rigid or magical formula can be offered to determine" its existence. 6 Moore, Federal Practice ¶ 56.15(1), at 2103 (1953). This case presents us with a situation where the so-called evidentiary facts—the underlying physical data—are not in dispute; but the inferences of fact to be drawn from them are disputed. The District Court had before it affidavits from both of the parties describing a course of business over a period of time. Copies of the contracts and of communications between the Government and Gillmors, and between Gill-

mors and Empire, were also submitted. From the evidentiary facts so presented, the District Court made an effort to draw inferences of the intentions of the plaintiff and Gillmors regarding the passage of title to the cables. But, there were ample evidentiary facts to support either an inference that the affixation of identification markers was so important as to be requisite to the passing of title or that it was not.

The District Court held that the shipment of the cables to Gillmors' plant "was an assent by the seller and buyer" to the transfer of property in the goods. Certainly this is a reasonable inference. But there are other facts which point to an opposite and reasonable inference. At no time from the shipment of the cables to Gillmors in March 1957 until Gillmors' filing of a petition in bankruptcy in August 1957 did Empire demand payment or Gillmors offer payment for the cables. Furthermore, Empire was not listed as a creditor in Gillmors' bankruptcy proceedings. The affidavit submitted on Empire's behalf stated that "without the identification tags, the Signal Corps troops would be unable to properly hook up this cable assembly." It was not Empire who shipped the cables to Gillmors, but it was the latter who "demanded that it pick up the two cable assemblies" apparently so that they could be inspected by the Government. Perhaps most persuasive of a contrary inference is that Gillmors wrote to the plaintiff on May 8, 1957 stating the proper identification markings for all seven cable types, including the two already in Gillmors' possession. It is true that "delivery of the goods to the buyer almost certainly indicates an intention" that the property pass. 2 Williston, Sales § 265, at 18 (rev. ed. 1948). But that is merely an inference to be drawn. In view of the direction in section 99 that the court look to "the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case", we believe it would be reasonable to draw conflicting inferences. This is especially true where, as here, the sur-

rounding facts cast light upon the state of mind not only of the seller of the goods but of the purchaser as well.

"The facts and circumstances, although in no material dispute as to their actuality, reveal aspects from which inconsistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ. The drawing of inferences and the acceptance of hypotheses arising out of the facts are ordinarily attributes that the judicial process has conferred upon the finder of facts." Winter Park Tel. Co. v. Southern Bell Tel. & Tel. Co., 181 F.2d 341 (5th Cir. 1950). "The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment * * *. 'A judge may not, on a motion for summary judgment, draw fact inferences.'" Bragen v. Hudson County News Co., 278 F.2d 615, 618 (3rd Cir. 1960). See Mullaly v. Carlisle Chem. Works, Inc., 184 F.Supp. 701, 707–08 (D.N.J.1960). See also Paul E. Hawkinson Co. v. Dennis, 166 F.2d 61 (5th Cir. 1948); General Accident, Fire & Life Assurance Corporation, Limited v. Goodyear Tire & Rubber Co., 132 F.2d 122 (2d Cir. 1942); 6 Moore, supra, at 2189. Where only one inference could reasonably be drawn from the undisputed evidentiary facts, then summary judgment would be proper, for, in the language of Rule 56(c), "the moving party is entitled to a judgment as a matter of law." In essence, the standard to be applied on a motion for summary judgment is similar to that applied to a motion for a directed verdict. See 6 Moore, supra, ¶ 56.02[10]; 3 Barron & Holtzoff, supra, § 1234, at 133. "Only when the evidence is such that it is clear the jury would have none to go on, though they believed that unfavorable to the movant for summary judgment can the motion be sustained * * *." Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359, 363 (5th Cir. 1945). The cases hold also, that in ruling on a motion for summary judgment, all doubts as to the existence of a "genuine issue as to any material fact" must be resolved against the moving party. See Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, 1018 (3rd Cir. 1942). The District Court must therefore take that view of the evidence most favorable to the opponent of the moving party, giving the opponent the benefit of all favorable inferences that may reasonably be drawn. "If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits." Ramsouer v. Midland Valley R. Co., 135 F.2d 101, 106 (8th Cir. 1943). This admonition should especially be kept in mind when the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions. See Alabama Great So. R. R. v. Louisville & Nashville R. R., 224 F.2d 1, 5 (5th Cir. 1955). See also Sarkes Tarzian, Inc. v. United States, 240 F.2d 467, 470 (7th Cir. 1957) (whether stockholders intended sale or exchange); United States v. Dollar, 196 F.2d 551 (9th Cir. 1952) (whether title was passed to shares of stock); National Surety Corp. v. Allen-Codell Co., 5 F.R.D. 3 (E.D.Ky.1945) (whether contracting parties intended time to be of the essence). The case cannot be taken from the trier of facts simply because "the lawyers for the respective parties, by the cross-motions, superinduced the idea that no factual questions were involved." Hycon Mfg. Co. v. H. Koch & Sons, 219 F.2d 353, 355 (9th Cir.), cert. denied, 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278 (1955). See Brawner v. Pearl Assurance Co., 267 F.2d 45, 46 (9th Cir. 1958).

While this case will ultimately be tried without a jury, Rule 56(c) establishes a single standard for the granting of summary judgment whether the case is tried to a jury or a judge. If reasonable inferences could be drawn regarding the intention to transfer the property in the cables in the case before us, such that the issue would be submitted to the trier of

fact, then Rule 56(c) leaves us no latitude and we must return that issue to the trier of fact, in this case the judge. See Asbill & Snell "Summary Judgment Under the Federal Rules—When an Issue of fact is Presented," 51 Mich.L.Rev. 1143, 1146 n. 15 (1953).

We therefore reverse the judgment below. Of course, in so holding we are not expressing any opinion on the merits of the case.