The **LEYMAN MANUFACTURING CORPORATION** and **Harry S., Jr.** and **Margaret Leyman, Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

Nos. 267–83T, 268–83T.

United States Claims Court.

July 19, 1985.

Susan Grogan Faller, Cincinnati, Ohio, for plaintiffs.

Robert N. Dorosin, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

These consolidated income tax cases come before the court on plaintiffs' motion for partial summary judgment and defendant's cross-motion thereto. At issue are the tax consequences of insurance premium costs provided by The Leyman Manufacturing Corporation (the "Company"), Docket No. 267–83T, to its president, Mr. Leyman, Docket No. 268–83T,[1] during the taxable years 1976, 1977 and 1978. Plaintiffs allege that the insurance qualifies as group term life insurance under Section 79 of the Internal Revenue Code of 1954, deductible to the Company as a business expense and to which only a portion of the premiums paid by the Company are taxed as income to the individual plaintiffs. Conversely, defendant argues that the premiums paid for such insurance were a constructive dividend in each year in issue, and therefore were not paid as compensation to Mr. Ley-

---

1. Margaret B. Leyman, the wife of Harry S. Leyman, Jr., is a plaintiff in this action solely because she and Mr. Leyman filed joint federal tax returns for the years in issue.

man for services rendered to the Company. Further, the defendant argues that even assuming arguendo that the premiums were paid as compensation for services rendered to Mr. Leyman, the insurance provided, nonetheless, does not qualify as Section 79 insurance.

Specifically, and against this background, the threshold substantive questions presented by the cross-motions for partial summary judgment are:

> Whether the annual premiums of $22,715 the Company paid the American Agency Life Insurance Company ("American Agency") in 1977 and 1978 for the policy issued to its president, Mr. Leyman, were compensation for services rendered by him and are therefore deductible under § 162 of the 1954 I.R.C. (or whether such premiums were disguised nondeductible dividend distributions)? [2]

As to the Company, the resolution of these initial issues turns not on whether the insurance qualifies as Section 79 group term life insurance, but rather whether the premiums were paid by the Company for insurance to compensate Mr. Leyman for services rendered, making it deductible under I.R.C. § 162, as opposed to disguising a nondeductible dividend to its stockholders. Defendant objects to resolving this issue by summary judgment because, with respect thereto, there are genuine issues of material fact.

As to Mr. Leyman's personal income tax liability, if the court finds that the insurance premiums were in fact and in law dividends, then *all* of such premium payments, may be fully taxable to him as income under I.R.C. § 61. On the other hand, if the insurance premiums paid by the Company are found by the court to be compensation for services rendered, then such compensation is also taxable as income to Mr. Leyman under I.R.C. § 61, but the extent of that tax liability (whether in toto or in part) turns on whether the insurance qualifies as Section 79 group term life insurance. By qualifying as Section 79 group term life insurance, the rule is that only the premium costs of the group term life insurance paid by an employer on coverage that *exceeds* the cost of $50,000 of such insurance is taxed to the employee. 26 U.S.C. § 79 (1976). But if said insurance does not qualify as Section 79 group term life insurance and instead is deemed to be true permanent life insurance fully paid for by the employer on behalf of the employee, then said premiums would appear to be *fully* taxable to the employee as compensation.

Thus, if the court finds that the premiums were paid for insurance by the Company as compensation to Mr. Leyman for services rendered, then the next issue will be:

> Whether, assuming the premiums paid on the policy each year were compensation, the modified death benefit life policy that the Company purchased from the American Agency on the life of Harry S. Leyman, Jr. as of November 1, 1976 (the "policy") is group term life insurance pursuant to Section 79 of the Internal Revenue Code of 1954?

■ For the reasons that follow, the court will not by this opinion reach the merits of either of the foregoing issues because we have determined that the initial issue is not ripe for summary judgment. That is so because the existence of disputed material fact inferences regarding the Company's intent [3] when it paid the

---

2. In Complaint No. 268–83T, the plaintiffs, Harry Leyman, Jr. and Margaret Leyman, have alleged that the Commissioner erroneously included in their 1977 and 1978 taxable income automobile expenses paid by Mr. Leyman's employer, The Leyman Manufacturing Corporation, because the Commissioner deemed the use personal rather than business. The parties have chosen not to address this issue through their dispositive motions because of genuine issues of material fact.

3. To determine whether a payment which is made to a third party by a closely-held corporation is compensation or a dividend, when that payment also benefits the corporation's stockholders, turns on two elements: reasonableness and the intent of the payor. Here, defendant concedes that the premium payments, in amount, were reasonable but avers that the inferences it draws from the nondisputed facts raise an issue of fact as to whether the corpora-

insurance premiums (*i.e.*, the parties disagree whether the Company intended to compensate Mr. Leyman as an employee, or issue a dividend to its stockholder) precludes this court from granting a partial summary judgment on the deductibility issue. Until trial is held to determine the intent of the Company on the compensation/dividend issue(s), the Section 79 group term life insurance issue will not be addressed by the court as such issue may become moot if the court finds the premiums to be a nondeductible dividend paid by the Company, which may be *fully* taxable to the taxpayers as dividend income.

Jurisdiction of these actions is premised upon 28 U.S.C. § 1346 and 28 U.S.C. § 1491.

## FACTS

The Leyman Manufacturing Corporation is an Ohio corporation which was incorporated in 1940. The Company primarily manufactures hydraulic lift gates. For the years 1976, 1977 and 1978, the Company had gross sales of $2,156,000, $2,602,000, and $2,095,000, respectively. In each of those years, the Company employed 39 or more individuals.

Harry S. Leyman, Jr. was the original founder of the Company and has served as its president since 1940. During the years in issue, Mr. Leyman was ultimately responsible for Company policy and management. He travelled extensively to promote the Company's products and made the fundamental decisions as to new product development. In fact, Mr. Leyman was recognized as the "primary decision maker" of the Company by the Examining Officer for the Internal Revenue Service. From 1976 through 1978, Mr. Leyman had no occupation other than his position as president of the Company. And during those years, the Company paid Mr. Leyman compensation and withheld therefrom and/or paid thereon all amounts required for social security, federal unemployment compensation, and federal income taxes.

Mr. Leyman did not own directly any stock of the Company during 1976 through 1978. However, his wife and four children were the sole shareholders of the Company during the 1976–1978 period, each owning one-fifth of the Company's 200 outstanding shares of common stock. In each of the years 1976, 1977, and 1978, the Company paid dividends of $25,000 in the aggregate to its shareholders.

The Company, throughout the years in issue, employed one other officer, Mr. Robert E. Drews, as its vice-president. Mr. Drews was recognized as the "secondary decision maker" of the Company by the Examining Officer of the Internal Revenue Service. However, he was not a shareholder of the Company, either directly or constructively during the 1976–1978 period. Nor was Mr. Drews related to Mr. Leyman or the Leyman family by either blood or marriage.

From May 1, 1976, through July 31, 1978, the Company maintained group term life insurance for the benefit of its full-time employees pursuant to Section 79 of the Code through a group policy issued by the Lincoln National Life Insurance Company ("Lincoln Plan"). Then, from August 1, 1978 through December 31, 1978, the Lincoln Plan was succeeded by a similar group term policy issued by the Union Central Life Insurance Company ("Union Plan"). Collectively, the Lincoln Plan and the Union Plan will be referred to as the "base plan".

The base plan provided group term life insurance, with no permanent benefits (such as cash values etc.), on the lives of *all* of the Company's regular employees. In each of the years 1976, 1977, and 1978, the base plan covered 39 or more employees. Under the base plan, the amount of term life insurance provided on each eligible employee during the 1976–1978 period was based upon the employee's compensation received from the Company. The amounts ranged up to $40,000 in coverage for employees earning annual salary or wages of $30,000 or more.

tion intended to pay compensation to Mr. Leyman.

On February 10, 1976, the Company decided to amend its group term life insurance plan by purchasing $250,000 of supplemental life insurance coverage for the Company's officers and any other employees whose annual earnings gave them the highest amount of life insurance coverage under the base plan. The premiums for this supplemental coverage were paid *entirely* by the Company plaintiff. At that time and throughout the 1976–1978 period, only two people qualified for this supplemental coverage: Mr. Leyman, the president of the Company, and Mr. Drews, the vice-president of the Company. The Company purchased this supplemental life insurance coverage from the American Agency Life Insurance Company which issued one policy on the life of Mr. Leyman and the other on the life of Mr. Drews. Thus, for the years in issue, Mr. Leyman and Mr. Drews were covered by both the base plan and the American Agency plan.

Mr. Leyman's policy, No. 24478, the nature of which is at issue here, was dated November 1, 1976, and characterized within the policy as a "Modified Death Benefit Policy on Form No. 103 MWL" (the "policy"). On the date of the policy issuance, November 1, 1976, Mr. Leyman was 62 and suffering from a heart condition and cancer. The annual premium on the Leyman policy was $22,715.00, but the premiums could also be paid semi-annually, quarterly, or monthly at the rate of $11,811.80, $6,019.48, or $2,044.35, respectively. For the years in issue, the Company paid Mr. Leyman's policy annually. The premium was payable for the lifetime of the insured. Page 1 of the American Agency policy issued on Mr. Leyman read as follows:

This is a *Modified Death Benefit Life Policy. During the first 3 policy years, the Death Benefit is limited to a refund of annual life insurance premiums plus 10% compounded annually....* After the 3rd policy anniversary, the Death Benefit is the Face Amount [$250,000]. The Accidental Death Benefit is limited to the first 3 policy years and is an additional amount equal to a refund of annual life insurance premiums plus 10% compounded annually. Premiums are payable for lifetime. (Emphasis added.)

Accordingly, the benefits of Mr. Leyman's American Agency policy were as follows:

| | During 1st Policy Year | During 2nd Policy Year | During 3rd Policy Year | Face Amount After 3rd Policy Year |
|---|---|---|---|---|
| Death Benefit: | $25,017 | $52,535 | $82,805 | $250,000 |
| Accidental Benefit: | $25,017 | $52,535 | $82,805 | None. |

Whether or not the premium payments were made on an annual or non-annual basis, the death benefit under Mr. Leyman's American Agency policy during the first three years of the policy was still equal to the amount of the full annual premiums paid for the policy year in which death occurred and any preceding policy year, plus 10% compounded annually.

Mr. Leyman's American Agency policy allocated a portion of the total premium to term benefits payable by the employer (Leyman Manufacturing Corporation), and a portion of the premium to permanent benefits taxable to the insured employee, Harry S. Leyman. Such allocations were prepared and provided by the insurance company by means of Endorsements. For the 1976 and 1977 policy years, the allocation between term and permanent benefits was based upon the "Fackler" or "Markowitz" formula, a common method then used in the industry to determine such allocations. For the 1978 policy year, the policy's premium was allocated between term and permanent benefits on the basis of the formula mandated by regulations under Section 79 issued by the IRS in 1979

which became effective January 1, 1978, for any policy in effect as of November 4, 1976.

Additionally, the preamble to the Endorsement of plaintiff's policy allocating the premium and insurance benefits between term and permanent insurance stated:

THIS POLICY IS MADE AVAILABLE ON BEHALF OF THE NAMED EMPLOYER AS PORTION OF A PLAN OF GROUP TERM LIFE INSURANCE AND IS INTENDED TO QUALIFY UNDER SECTION 79 OF THE INTERNAL REVENUE CODE, AS AMENDED, AND OF REGULATIONS THEREUNDER. THE INSURED AND THE EMPLOYER SHALL PAY RESPECTIVE PORTIONS OF THE ANNUAL PREMIUM PAYABLE FOR THE POLICY AS SET FORTH IN THE TABLE BELOW. NO PORTION OF THE PREMIUM ALLOCATED TO THE INSURED SHALL BE PAID BY THE EMPLOYER. THE PORTION OF THE DEATH BENEFIT OF THE POLICY WHICH IS INTENDED TO QUALIFY AS GROUP TERM LIFE INSURANCE IS SHOWN BELOW. AMERICAN AGENCY LIFE INSURANCE COMPANY ASSUMES NO RESPONSIBILITY AS TO WHETHER THE NAMED EMPLOYERS GROUP TERM LIFE INSURANCE PLAN QUALIFIES UNDER SECTION 79 OF THE INTERNAL REVENUE CODE, AS AMENDED, AND OF REGULATIONS THEREUNDER. IF THE PLAN IS TERMINATED, OR IF DURING THE CONTINUANCE OF THE PLAN THE INSURED CEASES TO BE A MEMBER OF SUCH PLAN, THE POLICY MAY BE CONTINUED IN FULL FORCE BY THE OWNER PROVIDED PREMIUMS ARE PAID WHEN DUE.

Based on the foregoing, the allocation of the $22,715 American Agency premium on Mr. Leyman's policy for the 1976–1978 period was as follows:

| | Employer Term Premium | Employee Permanent Premium |
|---|---|---|
| Policy Year (1) (1976) | $20,152.51 | $ 2,562.50 |
| Policy Year (2) (1977) | $10,780.01 | $11,935.01 |
| Policy Year (3) (1978) | $11,250.00 | $11,465.00. |

And the insurance death benefits were allocated as follows:

| | Term | Permanent |
|---|---|---|
| Policy Year (1) (1976) | $22,017 | $ 3,000 |
| Policy Year (2) (1977) | $35,285 | $17,250 |
| Policy Year (3) (1978) | $23,607 | $59,198. |

Comparatively, the American Agency policy issued on behalf of Mr. Drews was characterized within the policy as a "Whole Life Policy" and was dated November 1, 1976. At the date of the policy, Mr. Drews was 50. The annual premium on the Drews policy was $7,087.50, but the premium could also be paid semi-annually, quarterly or monthly at $3,685.50, $1,878.19, or $637.88, respectively. Like Mr. Leyman's policy, the premium was payable for the lifetime of the insured. However, the significant difference between Mr. Leyman's and Mr. Drews' policies was that Mr. Drews' policy paid a $250,000 immediate death benefit from the very first day of the policy whereas Mr. Leyman's policy paid a $250,000 death benefit only if he died after the third year. Both policies provided cash values.

For the years 1976, 1977, and 1978, the total of (1) salary and bonuses, and (2) the premium costs of the American Agency policy, paid to or on behalf of Mr. Leyman was $38,015, $39,215, and $40,415, respectively. For Mr. Drews, the analogous amounts were $61,879, $61,466.50, and $48,277.50, respectively. Mr. Leyman's compensation (salary, bonuses, and American Agency premiums) comprised 14.5%,

12.6%, and 29.4% of the Company's net profits for the 1976–1978 period.

By letter dated July 5, 1979, the American Agency, through its Assistant Secretary and Legal Counsel, Mr. Mayo, submitted to the IRS a request for a determination of the cost of permanent benefits and deemed death benefits provided by American Agency Life Insurance Policy Form No. 103 MWL (the policy at issue here) when such policy was used in connection with a group term life insurance policy qualifying under the auspices of Section 79 of the Internal Revenue Code. The request was made pursuant to Revenue Procedure 79–29, 1979–1 C.B. 571. In that July 5, 1979 request, Mr. Mayo, under penalties of perjury, stated, *inter alia,* that:

American Agency Life Insurance Company will issue the Policy in connection with group term life insurance plans seeking to qualify for the tax benefits of Section 79 of the I.R.C. of 1954, as amended. American Agency Life Insurance Company will provide each policyowner with an analysis as to the group term life insurance provided by such Policy and the cost of permanent benefits associated with such Policy. This analysis will be attached to the Policy by an endorsement and will be made a part of the Policy. Tillinghast, Nelson & Warren, American Agency Life's consulting actuaries, have prepared an analysis of Deemed Death Benefit and Cost of Permanent Benefits provided per $1,000 of coverage at each available issue age and Policy duration. This analysis is submitted in connection with this request.

\* \* \* \* \* \*

As required by Regulation 1.79–1(b)(III) and (IV), American Agency Life Insurance Company will allow the *policyowner* to drop the permanent benefit at any time and should the permanent benefit be dropped, the death benefit designation as group term life insurance that is provided to such employee will not be reduced because of the employee's election to drop the permanent coverage. (Emphasis added.)

In a letter dated December 6, 1979, the IRS replied to the American Agency's request, regarding the cost of permanent benefits of Modified Death Benefits Life Policy Form No. 103 MWL. The letter stated that:

We have reviewed the policies, formulas and method used to calculate the cost of permanent benefits, and the sample calculations.

... we conclude that the cost of permanent benefits is determined in compliance with section 1.79–1(d) of the regulations.

We are not ruling whether or not a plan that uses the policy form qualifies as a plan of group term life insurance under section 79 of the Internal Revenue Code of 1954. This letter pertains only to the computation of the cost of the permanent benefits.

Mr. and Mrs. Leyman reported on their federal income tax returns for the years 1976, 1977, and 1978 the cost of the insurance coverage *exceeding* $50,000 of coverage on the American Agency policy on Mr. Leyman's life as required by Section 79, assuming that the policy qualified as Section 79 term insurance. Because of miscommunications between American Agency, the Company, and Mr. Leyman, concerning the Company's group term life insurance, the Leymans allegedly inadvertently over-reported gross income for taxable years 1976 and 1978 by $2,092 and $325, respectively, and under-reported gross income for the tax year 1977 by $7,519. That is, according to Mr. Leyman, the cost of the American Agency policy that is taxable to him as income, assuming the policy does qualify as Section 79 insurance, should have been for the years 1976, 1977, and 1978, $2,602, $12,213, and $11,543, respectively. The defendant, however, contends that the entire cost of the premiums on Mr. Leyman's American Agency policy, $22,715, each year, is taxable to Mr. Leyman as income for one or both of two reasons: the policy's premium costs were dividends to the Leymans and the policy

542

does not qualify at all as Section 79 group term life insurance.

From the corporate aspect, the Company deducted all of the premiums it paid to American Agency on Mr. Drews' policy as well as on Mr. Leyman's policy, which totalled to $29,802.50 ($7,087.50 + $22,-715.00) on both its 1977 and 1978 corporate income tax returns as a business expense. The IRS does not object to the Company deducting the cost of Mr. Drews' American Agency policy in 1977 and 1978. However, the IRS takes a rather warm exception to the Company deducting the premium costs on Mr. Leyman's American Agency policy because it has previously determined that the premiums paid were in reality nondeductible disguised dividends rather than deductible compensation under § 162.

## DISCUSSION

Before this court can address the dispositive substantive issues presented in these cases, *supra,* it must first determine whether procedurally the court can properly resolve these issues on the merits by summary judgment. The ripeness of the compensation/dividend issue(s) must first be addressed because its resolution is determinative of the necessity of the court to reach the merits of the Section 79 issue. That is to say, it appears that the court need only address the Section 79 issue *if* we find that the Company paid the premiums on Mr. Leyman's American Agency policy as compensation to him for services rendered to the Company.

*Compensation v. Disguised Dividend*

(1) Summary Judgment Application

■ Summary judgment, as provided by RUSCC 56(c), is appropriate only if it appears from the pleadings and supporting documentation that (1) no genuine dispute as to any material fact exists and (2) such facts would entitle the moving party to judgment as a matter of law.[4] *Irwin v.*

4. RUSCC 56(c) states, in pertinent part, that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together

*United States,* 558 F.2d 249, 251 (5th Cir. 1977); *Cooper v. Ford Motor Co.,* 748 F.2d 677, 679 (Fed.Cir.1984). In order to determine whether summary judgment is proper, it is first necessary for the court to analyze the legal result sought to be compelled. *Irwin v. United States,* 558 F.2d at 251. "Only by analyzing the legal result can we determine what facts must be established and whether those facts are in genuine dispute." *Id.*

■ Here, on the compensation/dividend issue(s), the Company asserts that it paid the premiums each year on Mr. Leyman's American Agency policy as compensation for services rendered by Mr. Leyman to the Company, which amount is fully deductible under section 162 of the 1954 Internal Revenue Code. Section 162 of the Internal Revenue Code, governing trade or business expenses, reads in pertinent part that:

(a) In general

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, *including —*

(1) *a reasonable allowance* for salaries or *other compensation for personal services* actually rendered; (Emphasis added.) 26 U.S.C. § 162 (1976).

To deduct the premium costs on Mr. Leyman's American Agency policy, therefore, the Company must satisfy two basic requirements: First, the premium payments must not exceed an amount which would constitute reasonable compensation for the services actually rendered. Second, it must be shown that such payments were actually intended to be paid as compensation for services rendered. *N.W.D. Investment Co. v. Commissioner,* 44 T.C.M. (CCH) 1246, 1250 (1982); Treas.Reg. § 1.162–7(a). *See also Whitcomb v. C.I.R.,* 81 T.C. 505, 519 (1983), *aff'd,* 733 F.2d 191, 193 (1st Cir. 1984).

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

As to the initial element, the defendant concedes, in its brief, that the premiums paid by the Company on Mr. Leyman's American Agency policy were reasonable in amount. However, the defendant does challenge the plaintiffs' averment that the premiums were paid *as compensation for services rendered* by Mr. Leyman to the Company. In other words, the defendant is questioning, although somewhat tacitly, the Company's intent to pay "compensation" when it paid the premium on Mr. Leyman's life insurance policy for each year in issue.

As observed by the Tax Court, and we agree, "[t]he question of whether the premium payments herein were intended as compensation is a factual question, the burden of proof of which is on [the taxpayer Company]." *N.W.D. Investment Co.*, 44 T.C.M. (CCH) at 1250. Thus, against this procedural background, the precise issue before the court then is—whether the Company's intent, a material fact here,[5] is genuinely in dispute so as to preclude this court from adjudicating the merits of the compensation/dividend issue(s) via summary judgment. In light of the principles delineated hereinafter, we find that the fact of intent is not only material but that it is also genuinely in dispute, making these cases inappropriate for summary judgment on the compensation/dividend issue(s).

■ Our analysis begins by observing that it is axiomatic that "[t]he party seeking summary judgment bears the *exacting burden* of demonstrating that there is no actual dispute as to any material fact in the case." (Emphasis added.) *See Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982), and cases cited therein. In the words of the United States Supreme Court, summary judgment is authorized "where it is quite clear what the truth is." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82

S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). In assessing whether the movant has met this burden of clearly showing what the true facts are, the court must view the evidence and all factual inferences reasonably deducible therefrom in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed.Cir.1983). In short, "[a]ll reasonable doubts about the facts should be resolved in favor of the non-moving litigant." *Impossible Electronics*, 669 F.2d at 1031.

■ Additionally, "the court, on a motion for summary judgment, cannot *try* issues of fact but can only determine whether there *are* issues of fact to be tried; and once having determined this affirmatively must leave those issues for determination at a trial." *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir.1962). (Emphasis in original.) Even where the parties agree on the basic facts, but disagree with regard to the material factual inferences that should be drawn from these basic facts, summary judgment may be inappropriate. *Impossible Electronics*, 669 F.2d at 1031. Therefore, if reasonable minds might differ as to the material inferences arising from the undisputed facts, then in such case the court should deny summary judgment. *Id.; Empire Electronics Co.*, 311 F.2d at 180. *Coastal Petroleum Company v. United States*, 220 Ct.Cl. 690, 693 (1979). "This admonition should especially be kept in mind when the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions." *Empire Electronics*, 311 F.2d at 180; *see also Poller*, 368 U.S. at 473, 82 S.Ct. at 491; *Irwin v. United States*, 558 F.2d at 252; *Cross v. United States*, 336 F.2d 431, 433 (2d Cir.1964); *Celanese Corporation and Consolidated Subsidiaries*,

---

**5.** A *material fact* is one that will make a difference in the result of the case. *Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216, *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d

81 (1951), *reh. denied*, 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960); *Laningham v. United States*, 2 Cl.Ct. 535, 554 (1983).

8 Cl.Ct. 456, 470 (Cl.Ct.1985). Because proof of the fact of intent by the requisite quantum greatly depends, in large measure, upon the credibility of the witness(es) testifying, examination and cross-examination are indispensable tools in the obtainment of the true facts. *Irwin,* 558 F.2d at 252; *In Re Yarn Processing Patent Validity Litigation,* 498 F.2d 271, 288 (5th Cir. 1974), *cert. denied,* 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974); *Celanese Corporation,* 8 Cl.Ct. 456, 470 (Cl.Ct.1985).

■ Finally, "[o]ne who moves for summary judgment is not entitled to judgment 'merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to win at trial.'" *Hayden v. First National Bank of Mount Pleasant, Texas,* 595 F.2d 994, 997 (5th Cir.1979). Thus, the party opposing a motion for summary judgment need not respond to it with affidavits or other evidence "unless and until the movant has properly carried its burden." *Impossible Electronics,* 669 F.2d at 1031; *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1609. However, once the movant has persuasively carried its burden, it then becomes perilous for the opposing party to neither proffer any countering evidentiary materials nor file a RUSCC 56(f) affidavit. *Adickes,* 398 U.S. at 161, 90 S.Ct. at 1610; RUSCC 56(e), (f).

Against the foregoing requirements of RUSCC 56, the plaintiffs argue that all of the material facts on the compensation/dividend issue(s) are detailed in Mr. Leyman's two sworn affidavits, the facts within which are unchallenged by defendant. For the foregoing reason, at oral argument, the plaintiffs contended that "there is only one set of facts, and the only thing to be decided is the legal conclusions [sic] resulting therefrom." Conversely, the defendant, when it filed its cross-motion for partial summary judgment and reply brief, did not object to disposing of the compensation/dividend issue(s) by summary judgment. However, it was defendant's then position that, based on the uncontroverted facts, as a matter of law, it was entitled to

judgment on the compensation/dividend issue(s). Nonetheless, at oral argument, the defendant argued that the question of intent was an issue that is uniquely *inappropriate* for summary judgment and that it was not resting on mere factual allegations but rather on the reasonable adverse inferences drawn from the facts in Mr. Leyman's affidavits or exhibits attached to his complaint. The defendant, therefore, maintained that the court should remit the parties to conduct appropriate discovery and pretrial preparation on the corporate case.

Initially, the court observes that this is a classic case wherein the underlying facts are not in dispute but rather the parties are disagreeing as to the reasonable material inferences to be drawn therefrom. *See Impossible Electronics,* 669 F.2d at 1031; *Empire Electronics,* 311 F.2d at 180. The defendant has not filed any countering evidentiary materials pursuant to RUSCC 56(e) or a RUSCC 56(f) affidavit, but rather is contesting summary judgment on the basis that the plaintiffs, as the movants, have *not* carried their burden of proving that the fact of intent is not in dispute when inferences from the underlying facts are viewed in the defendant's favor. Thus, at this posture, we must examine whether the plaintiffs have carried their burden because, failing such, the motion for partial summary judgment must be denied on the compensation/dividend issue(s).

From Mr. Leyman's affidavits, the plaintiffs point to the following undisputed facts from which the intent to compensate Mr. Leyman, rather than to issue a dividend, can be inferred: Mr. Leyman, as president of the Company, was ultimately responsible for Company policy and management; he travelled extensively to promote the Company's products and made fundamental decisions as to new product development; during the 1976–1978 period, Mr. Leyman had no occupation other than as president of the Company; the IRS, itself, recognized Mr. Leyman as the "primary decision maker" of the Company; the Company's vice-president, Mr. Drews, who was not a shareholder, directly or constructively, nor relat-

ed to the Leyman family by blood or marriage, also received the supplemental life insurance coverage provided by the American Agency; for the 1976–1978 period, the total of salary, bonuses, and premium costs paid to or on behalf of Mr. Drews by the Company exceeded that paid to or on behalf of Mr. Leyman (compare $61,879.00, $61,466.50, $48,277.50, respectively, to $38,015.00, $39,215.00, and $40,415.00, respectively); the Company paid dividends of $25,000 in each of the years 1976, 1977 and 1978; and, for the years 1976, 1977 and 1978, the total of (1) salary and bonuses and (2) the premium cost of Mr. Leyman's American Agency policy represented 14.5%, 12.6%, and 29.4%, respectively, of the Company's net profits for such years. Although not stated by Mr. Leyman in his affidavits, the plaintiffs also contend that: The premium payments on the American Agency policies were not based on stockholdings of persons eligible for the supplemental life insurance coverage; the premium payments were fixed rather than fluctuating with the earnings or profits of the Company; and that the relatively minimal amount of deduction taken by the Company, which had substantial income in each tax year in issue, was not a device to reduce taxable income to a negligible amount.

Reasonably inferable and in contrast, from facts in the same affidavits or exhibits attached to the plaintiffs' complaints, the defendant points to the following inferences from which the intent to issue a dividend can be drawn: Mr. Leyman was a wealthy man who did not need this policy as an incentive to work; he had ample income as set forth in his tax returns; his family owned all of the Company's stock; Mr. Leyman was of advanced age and in ill health when the Company purchased the policy and only worked part time in 1977 according to his tax return; the yearly premium payments of $22,715 exceeded his salary in the 1976–1978 period; the insurance proceeds upon the death of Mr. Leyman would furnish his wife, Margaret Leyman, a stockholder and designated beneficiary, ample cash to pay federal and state estate taxes on Mr. Leyman's estate; and the Company had no need to purchase the policy for Mr. Leyman to encourage him to work harder.

When the foregoing material facts are viewed in the light *most favorable to the defendant*, reasonable inferences can be drawn to support defendant's contention that the premiums paid by the Company were in reality intended to be a distribution of corporate earnings and not compensation for services rendered. Certainly, plaintiffs have failed to show that it is "quite clear what the truth is [whereas here it is evident to the court that there is a substantial doubt]." *Poller*, 368 U.S. at 467, 82 S.Ct. at 488. The court notes that in 1976 and 1977 the Company's taxable income, *after* the insurance premium deduction was taken, was $227,010.69 and $286,573.20, respectively, thereby making the $25,000 in dividends previously issued comprise only 11.01% and 8.72% of the Company's taxable income. These percentages, in our view, are sufficiently borderline to cause the court to furrow its brow and agree with defendant that there is a real question of the Company's true intent. *See Charles McCandless Tile Service v. United States*, 191 Ct.Cl. 108, 422 F.2d 1336 (1970). Because the question of intent is involved, which in most cases is inappropriate for summary judgment, *infra*, and in light of the conflicting and reasonable inferences that can be drawn from the underlying facts, we are constrained to find that at this stage summary judgment is clearly inappropriate.

As discussed earlier in the opinion, the court will not address the Section 79 issue until after we have determined the intent of the Company at the time it paid the premiums on Mr. Leyman's American Agency policy. If, after trying the Company's case, we find that in fact and in law the Company intended to issue a dividend, which is nondeductible to the Company, then the court will have to determine whether such dividend will have a flow-through character to the taxpayer(s) and will therefore be taxed as dividend income

**546**

under I.R.C. § 61. *See Whitcomb v. C.I.R.*, 81 T.C. 505, 519 (1983), *aff'd*, 733 F.2d 191 (1st Cir.1984); Treas.Reg. § 1.79–1(a)(3) in effect throughout the 1976–1978 period.

On the other hand, if on the merits this court finds that the Company intended to pay compensation to Mr. Leyman, by virtue of paying the insurance premiums, then in such case the court will rule on the partial summary judgment motions raising the Section 79 issue.

However, in the interest of judicial economy, the court will refrain from reaching the Section 79 issue, until such time, *supra,* which issue may become moot if we find that the premiums paid constitute a distribution of corporate earnings and not compensation to Mr. Leyman for services rendered.

For the foregoing reasons, plaintiffs' motion and defendant's cross-motion for *partial* summary judgment (on the compensation/dividend issue(s)) are denied. A pretrial order is simultaneously filed herewith relative to a trial on the merits of the compensation/dividend issue(s), as well as the issue identified in footnote 2, *supra.*

IT IS SO ORDERED.