**FIRST AMERICAN TITLE INSURANCE COMPANY, Plaintiff**

v.

**Thomas P. POLITANO, Defendant.**

**No. 2:95–CV–12.**

United States District Court, D. Vermont.

July 25, 1996.

Christopher Paul Rhodes, Biederman & Rakow, P.C., Rutland, VT, for plaintiff.

Martha Marguerite Smyrski, Ryan, Smith & Carbine Ltd., Rutland, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff, First American Title Insurance Company ("First American"), has filed this diversity action for breach of contract and negligence claims against Defendant, Thomas Politano ("Politano"). First American has moved for partial judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the issue of breach of contract. Defendant opposes the motion. Because First American has submitted documents outside the pleadings, including the contract and letters of correspondence for the Court's review, this motion shall be viewed as one for summary judgment in accordance with Fed.R.Civ.P. 12(c) and pursuant to Fed.R.Civ.P. 56.

## BACKGROUND

This case involves a title insurance company which alleges that a title insurance agent wrongfully issued title insurance on its behalf. For purposes of deciding the instant matter, the Court assumes the following facts are true.

First American entered into a contract with Politano on or about October 4, 1984. (Compl., ¶ 6). The contract, entitled "Agreement For Appointment of Policy Writing Attorney For First American Title Insurance Company" ("the Agreement"), made Politano an agent for First American for the purpose of issuing title insurance policies and entering into commitments on behalf of First American in the State of Vermont. (Compl., ¶ 7, *see also* App. A). As a limitation on Politano's authority, the contract states: "Agent shall not, without written approval from First American, ... [c]ommit First American to a risk ... which Agent knows to be based upon a disputed title." (App.A, § 2B.) The contract also provides:

> *Preparation and Commitments:* Agent will show as exceptions to coverage all matters disclosed by the opinion of the titles, such as taxes, restrictions, conditions, easements and limitations (noting after the reference to the recording information whether or not such restrictions

contain a reversionary or forfeiture clause), and any other matters which constitute a defect or question as to the validity of the title being insured.

(App.A, § 8). Finally, in § 10, the Agreement states: "... if the Agent becomes aware of any circumstances which may give rise to a claim under any such exposure, Agent agrees to immediately notify First American ..." (App.A, § 10).

The property for which the title insurance was issued includes a northern parcel ("northern parcel") of land near Carinthia Access Road. The chain of title to the northern parcel allegedly passed from Mr. Hastings to Ms. Pietz to Mr. Scios, to whom the title insurance in question was issued.

The facts underlying the instant matter arose as follows. On October 21, 1988, Walter Soderlund wrote a letter to Ms. Pietz stating that he had become aware that she had erected a building foundation on the northern parcel. Claiming ownership of the northern parcel, he demanded that Ms. Pietz "immediately remove said foundation and ... return my land to the condition in which it existed prior to your construction." (App. C).

Acting on behalf of Ms. Pietz, Politano responded with a letter dated October 27, 1988 stating that the record was clear as to Ms. Pietz's ownership of the northern parcel. According to Politano's letter, Walter Soderlund's misunderstanding as to ownership may have been caused by a change in the initial lines drawn on a map prepared in contemplation of a conveyance to Walter's immediate predecessor in title, Evret Soderlund, in 1969.

Evret Soderlund had received .466 acres of land in 1969. Although the .466 acres was originally intended to include the northern parcel, the deed was modified to eliminate thirty-three feet to the north and add the same amount of land to the west and south. This deed, effective in May of 1969, was then recorded in Book 25 page 301 of the Dover Land Records.

The northern parcel, eliminated from Evret's deed, was then conveyed to Mr. Hastings, who subsequently conveyed it to Ms. Pietz. According to Politano, the map and the deed from 1969 "match perfectly." Politano concluded his letter by stating that: "I trust this will end the matter of your claim. If, however, you persist in muddying the waters of so clear a record, my client ... will sue you for damages for delay, and other legal sanctions for obvious harassment." (App.D). Politano sent a copy of his correspondence to Mr. Scios.

In November, Politano received a response to his letter from Walter Soderlund's attorney, Robert Jaeger. Mr. Jaeger agreed that in May, 1969 a deed was conveyed to Evret Soderlund for property on the west side of Mr. Hastings's land. However, "the deed to Mr. Hastings for the northern parcel was conveyed in July, 1969 and began at a similar point," and thus it seemed that the northern parcel had been conveyed to both parties. Furthermore, he asserted that the map was only useful in that it clearly showed that the same land was actually conveyed twice. Because Evret's deed was given and recorded first, Mr. Jaeger claimed that Politano's client was constructing a house on land apparently owned by Walter Soderlund. Mr. Jaeger stated that they awaited further correspondence on this matter, and he sent a copy of the letter to Mr. Scios. (App.E).

On January 13, 1989, Politano issued a title insurance policy covering real estate which included the northern parcel to the Prudential Home Mortgage Company, Inc. as lender in the amount of $143,000.00. (App.B). Included was an attachment entitled "Schedule B" which included exceptions to defects in title. The only exception noted was a utility easement which the policy indicated did not adversely affect residential use of the premises. (App.B, Schedule B).

This policy, entitled Policy Number 80005783, listed the mortgagor of the property as Robert J. Scios in whose name title to the property was held. First American insured the title to this property to protect the mortgage interest of Prudential Home Mortgage Company in said real estate.

After the policy was issued and authorized by Politano, Walter Soderlund instituted a suit against Mr. Scios, who was then title holder of the real estate, and Prudential.

Prudential[1] then called upon First American to defend its title under its policy of title insurance, and to indemnify Prudential from any loss sustained on account of any risk, including title defect, covered by said insurance policy. (Compl., ¶ 28).

First American alleges that Politano, when issuing the policy, represented to First American that the title to said real estate covered was "clear and undisputed," save only for the exceptions listed in Schedule B of the policy. (Compl., ¶ 22). Additionally, First American asserts that Politano violated his contract in Paragraph 2B when he committed First American to a risk by issuing the title insurance on the property knowing that the title was in dispute.

Politano denies that he violated the agreement. He asserts that to grant First American's motion, the Court must find that his receipt of the correspondence necessarily meant that he knew of a claim against the property. He further contends that this would require the Court to make a determination of his mental state. Because the parties are in dispute regarding his mental state, he argues that summary judgment should be denied.[2]

### DISCUSSION

■ Summary judgment shall be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is a genuine dispute over a material fact when the evidence requires a factfinder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. at 2510–11 (citing *First Nat'l Bank of*

*Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

■ In analyzing the record, the court must view the evidence in the light most generous to the nonmoving party and resolve all ambiguities in its favor. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The Vermont Supreme Court has held that issues regarding state of mind should not be resolved at the summary judgment stage.[3] *Barbagallo v. Gregory,* 150 Vt. 653, 653, 553 A.2d 151 (1988). In *Barbagallo,* the plaintiff brought a complaint against the defendant for negligent entrustment of a motor vehicle to her son. Affirming the denial of a motion for summary judgment by the lower court, the Vermont Supreme Court stated that the requisite knowledge of the defendant could be shown only by evidence indicating her state of mind at the time she lent her car to her son. It then held that if the determination of the dispositive issue requires an inquiry into state of mind, the jury should be given the opportunity to assess the credibility of the party whose state of mind is at issue. *Id.*

Likewise, the Second Circuit has repeatedly stated that summary judgment is inappropriate when questions of motive, intent, subjective feelings and reactions are at issue. *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir.1973). This precept is well-illustrated in *Sheppard v. Beerman,* 18 F.3d 147 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). In *Sheppard,* a law clerk

**1.** On February 14, 1991, Prudential was granted a Judgment Order and Decree of Foreclosure in which Prudential became the owner of the real estate subject to the title insurance, thus becoming the title owner of the property insured by the above mentioned title insurance policy. (Compl., ¶¶ 18–20).

**2.** Alternatively, Politano argues that First American's breach of contract claim is not well-plead-

ed, and thus, it is not entitled to judgment in its favor. However, the Court need not address this issue, as it is denying summary judgment on other grounds.

**3.** In a diversity action, the court shall apply state law to resolve the dispute. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

alleged that he was discharged in retaliation for confronting the justice for whom he worked about instances of judicial misconduct. Dismissing his civil rights claim on a pretrial motion, the district court determined that the law clerk's discharge was not retaliatory, but rather precipitated by his insubordination. The Second Circuit, reversing the dismissal, stated that "the motivating factor behind [the law clerk's] firing ... is clearly a question of fact." 18 F.3d at 150.

■ Delving into the internal workings of the parties' minds and making credibility assessments is within the special province of the trier of fact. *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984). *See General Accident, Fire & Life Assurance Corp. v. Goodyear Tire & Rubber Co.*, 132 F.2d 122, 125 (2d Cir.1942) (disputed questions of fact pertaining to actual knowledge should be heard on the evidence and not determined on a motion for summary judgment); *see also Lipton v. The Nature Co.*, 71 F.3d 464, 472 (2d Cir.1995) (citing to *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994)) (resolutions of credibility are within the scope of the jury and may not be resolved on summary judgment).

Leaving issues of assessing credibility to juries or factfinders is particularly important when conflicting inferences about a party's knowledge can be deduced from the evidence. Confronted with this situation in *Empire Electronics Co. v. United States of America*, 311 F.2d 175 (2d Cir.1962), the Second Circuit stated that a court may not make an inference of fact at the summary judgment stage. The district court was faced with the issue of who retained title to cable assemblies following a petition in bankruptcy. In that case, the court had before it affidavits and documents from the parties describing a course of business over a period of several years. Copies of the contracts and communications were also submitted. The Second Circuit, in reversing the grant of summary judgment, stated that the district court, although making a reasonable inference based on the facts, could easily have determined that other facts pointed to an opposite and equally reasonable inference. The Second Circuit held that where the facts

and circumstances, although not in material dispute as to their actuality, reveal aspects from which inconsistent hypotheses might reasonably be drawn, and reasonable persons might differ, it is not an issue for disposal by summary judgment, but a function for a trier of fact. *Empire Electronics*, 311 F.2d at 179–80.

■ As in *Empire Electronics*, conclusively deciding Politano's knowledge, or lack thereof, based on the contract and letters would require this Court to make an impermissible inference. It is undisputed that Politano signed an agreement with First American which contained a clause that he would not commit First American to a risk which he knew to be based upon a disputed title without prior written approval by First American. Correspondence was received by Politano pertaining to the property in question. Based upon these letters, the Court might draw an inference that a reasonable person, upon receiving a letter stating that the same land was conveyed twice to different parties (App.E.), would have reason to know that the title was in dispute. Conversely, Politano indicated in his letter that "the record was clear as to the ownership of the property," and refers to the Dover Land Records for the recorded deed. (App.D). Here the Court could infer that a person who was accustomed to researching Vermont land records could reasonably believe that the title was not in dispute. If reasonable persons might reach different conclusions, especially when the inferences pertain to questions of motive, intent, subjective feelings and reactions, the motion for summary judgment should be denied and the case tried on its merits. *Id.* at 180.

### CONCLUSION

For the reasons set forth above, the Court hereby DENIES the Plaintiff's Motion for Summary Judgment.